IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOEL ARIO, Acting Insurance Commissioner for the Commonwealth of Pennsylvania, acting in his official capacity as Statutory Liquidator of Legion Insurance Company and Villanova Insurance Company, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05 C 1049 |
| AMERICAN PATRIOT INSURANCE AGENCY, INC., a Wisconsin corporation, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

This litigation between the liquidator of an insolvent insurance company and an agency that sold insurance policies on its behalf is both protracted and complex. For an in-depth discussion of the claims and defenses at issue, see this court's Memorandum Opinion and Order of September 7, 2007. (Dkt. No. 237.) Now pending before the court is defendant American Patriot's "Second Motion to Overrule Claim of Attorney-Client Privilege." (Dkt. No. 321.) For the reasons set forth below, American Patriot's motion is denied as premature.

BACKGROUND

In a nutshell, the plaintiff—the Statutory Liquidator ("Liquidator") of Legion Insurance Company and Villanova Insurance Company (collectively "Legion")[1]—seeks to recover premiums allegedly owed by defendant American Patriot Insurance Agency, Inc. ("American Patriot") under a Limited Agency Agreement in effect from 1997 to 2001. In defense of this lawsuit, American Patriot claims that the Limited Agency Agreement was fraudulently procured.

Specifically, American Patriot alleges that, in February 2000, representatives from Legion Insurance Company and Commonwealth Risk[2] made materially false statements to American Patriot shareholder Diane Hendricks and American Patriot President Lysa Saran for purposes of inducing them to agree to renewal of the Limited Agency Agreement (and other related Program documents) for a forth year ("Year Four"). These fraudulent misrepresentations were allegedly made by Eric Bossard, Vice President of Legion ("Bossard") and James Agnew, Vice President of Commonwealth Risk ("Agnew"), after consultation with, and with the agreement of, Glenn Partridge, Executive Vice President of Legion ("Partridge"), Richard Turner, President of Commonwealth Risk ("Turner"), Andrew Walsh, Legion's in-house counsel

---

[1] Villanova Insurance Company became a party to the Limited Agency Agreement effective March 23, 1998, pursuant to Addendum A-2. (*See* Dkt. No. 156-6 at 7.) The parties do not distinguish between Legion Insurance Company and Villanova Insurance Company in relation to the claims and defenses at issue in this case.

[2] As previously explained by this court, the Limited Agency Agreement was part of the Roofers' Advantage Program (the "Program") offered through Legion and its affiliates. (Dkt. No. 237 at 2.) Marketing services for the Program were provided by Commonwealth Risk Services, L.P. ("Commonwealth Risk"), which provided American Patriot with a Program proposal for each upcoming Program year. (*Id*. at 3.)

("Walsh"), and David Alexander, President of Mutual Indemnity (Bermuda), Ltd.[3] ("Alexander").

PROCEDURAL HISTORY

In conjunction with this lawsuit, counsel for American Patriot deposed non-party witnesses Walsh and Turner in March 2006. When the deposition questioning turned to the alleged fraudulent representations that were made in February 2000, counsel for then-Liquidator M. Diane Koken ("Koken") asserted the Liquidator's rights to Legion's attorney-client privilege, on the grounds that the relevant discussions necessarily included legal advice given by in-house counsel Walsh. Koken's counsel cautioned both deponents that the privilege was not theirs to waive, and Walsh and Turner were instructed by their counsel not to answer a number of questions pertaining to the alleged fraud. The parties eventually stipulated that their positions were not likely to change with respect to inquiries into the alleged fraud, and the parties agreed to postpone Partridge's deposition until the question of privilege had been resolved.[4]

American Patriot then filed a "Motion to Overrule Claim of Attorney-Client Privilege and to Compel Responses to Deposition Questions and Other Discovery" (Dkt. No. 62), arguing that the crime-fraud exception nullified the asserted privilege, and that the Liquidator waived the privilege during Walsh's deposition when she asked him to interpret American Patriot's liability

---

[3] Mutual Indemnity (Bermuda), Ltd. ("MIB") acted as reinsurer of the Program.

[4] As far as this court is aware, American Patriot has not yet sought to depose Bossard or Agnew in this litigation; however, American Patriot is in possession of sworn affidavits signed by Bossard and Agnew that describe the February 2000 discussions with Walsh in detail (*see* Dkt. No. 326, Exs. A, B, and C), as well as a deposition given by Bossard on November 24, 2003, in connection with an arbitration proceeding between Legion Insurance Company and John Hancock Life Insurance Company (*id.*, Ex. D (filed under seal in this litigation pursuant to a protective order (Dkt. No. 198))).

3

under the same Program documents that were the subject of the alleged fraud. Magistrate Judge Nan R. Nolan, to whom all discovery disputes have been referred in this case, denied American Patriot's motion without prejudice "for the reasons stated in open court." (Dkt. No. 77.) Magistrate Judge Nolan found American Patriot's motion to be premature, stating "the underlying problem here is you want me to look at crime fraud and I am telling you I can't do it without first deciding who is right." (Dkt. No. 83, Ex. 3 ("May 9, 2006 Tr.") at 16:13-16). Magistrate Judge Nolan then bifurcated the discovery process, determining that discovery on the privilege issue "has to wait until a ruling on what I am calling the issue of the case which is the parties' differing interpretations of [American Patriot's] liability" under the relevant Program documents. (*Id.* at 22:10-12; *see also id.* at 17 "we are reserving this part of discovery.") Magistrate Judge Nolan noted that "the parties' differing interpretations of the liability distribution are crucial to understand the events that occurred in 2000," and she declined to rule on the substance of American Patriot's motion, instead specifically inviting American Patriot to "raise the issue as soon as summary judgment is made." (*Id.* 15:13-15; 16:25-17:2.) This court held on December 4, 2006, that Magistrate Judge Nolan did not commit clear error when she determined that "the privilege issue could be effectively bifurcated" from the other issues in the case. (Dkt. No. 192 at 12-13.)

The relevance of American Patriot's liability under certain Program documents has been addressed by this court in ruling on the Liquidator's "Motion for Summary Judgment on Defendants' Affirmative Defenses." (Dkt. No. 159.) In its Memorandum Opinion and Order, this court held that the various Program documents are sufficiently interrelated such that American Patriot's affirmative defenses to the enforcement of Year Four of the Limited Agency

4

Agreement (at issue in this litigation) can rely on damages suffered under Year Four of the Shareholder Agreement.[5] (Dkt. No. 237 at 11, 13-14, 18-20.) Whether American Patriot is liable under the terms of the Shareholder Agreement is a question presently being litigated before the Supreme Court of Bermuda.[6]

More recently, after ordering that discovery in this case be completed by December 7, 2009 (Dkt. No. 314), this court granted American Patriot leave to file a motion regarding the need for "Bermuda discovery." (Dkt. No. 320.) It is through this chain of events that American Patriot's "Second Motion to Overrule Claim of Attorney-Client Privilege" (Dkt. No. 321) has come to now be pending before this court.

ANALYSIS

In the pending motion, American Patriot contends that "the Liquidator may no longer stand on the privilege" because various participants in the February 2000 meeting, including Walsh, Turner, Partridge, and Alexander "intend to testify about the particulars of the February 2000 meeting" as part of the Bermuda Action. (Dkt. No. 321 ¶ 3.)

As this court has previously noted, "Magistrate Judge Nolan intentionally saved the question of privilege for another day." (Dkt. No. 192 at 9.) The "question of privilege"

---

[5] The Seventh Circuit has viewed all Program documents as a "package" for purposes of contract analysis. (*See* Dkt. No. 237 at 18-19 (quoting *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 354 F.3d 884, 889 (7th Cir. 2004)).) Pursuant to the Shareholder Agreement, the shareholder was obligated to indemnify MIB for certain losses on the Program. While American Patriot originally was a party to the Shareholder Agreement with Mutual Holdings (Bermuda), Ltd., in 1997, the Shareholder Agreement was amended in 1998 to retroactively substitute Diane and Kenneth Hendricks as shareholder.

[6] The "Bermuda Action" includes case 2003 No. 26 (*Mutual Holdings (Bermuda) Limited v. American Patriot Ins. Agency, Inc., et al.*) and case 2004 No. 196 (*American Patriot v. Mutual Indemnity (Bermuda) Ltd.*), which have been consolidated.

5

includes such issues as the proper scope of the attorney-client privilege asserted by the Liquidator, whether the privilege has been waived by the Liquidator at any point, whether the privilege has been waived by any of the participants in the February 2000 meeting, whether these witnesses *can* waive the privilege, and whether the crime-fraud exception should apply to bar application of the privilege in this instance. In short, all discovery regarding "the events that occurred in [February] 2000," (May 9, 2006 Tr. at 15:15), has been stayed at this point in the litigation.

The Liquidator contends that this court "necessarily held that the communications American Patriot were attempting to uncover **were** privileged" when it affirmed Magistrate Judge Nolan's ruling. (Dkt. No. 331 at 5 (emphasis in original).) This is not so. Magistrate Judge Nolan found that American Patriot's motion to overrule the Liquidator's claim of privilege was premature as a whole. In dismissing the motion without prejudice, she specifically declined to determine whether the attorney-client privilege had been properly asserted by the Liquidator. (*See* May 9, 2006 Tr. at 25:9-12 (encouraging the parties to "talk back and forth and see what you can do" to resolve American Patriot's contention that "Mr. Walsh's mere presence in the room doesn't sustain the basis for a privilege assertion").)

## CONCLUSION

Because all discovery regarding American Patriot's allegations of fraud in February 2000 has been stayed at this point in the litigation, it is irrelevant whether any of Legion's former employees are now engaging in activity that could constitute waiver of the attorney-client privilege asserted by the Liquidator in regards to the February 2000 conversations. Accordingly, American Patriot's motion is denied as premature. The parties are again encouraged to discuss

settlement. The previous set trial dates of April 9 and April 16, 2010 remain in effect.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 5, 2010